IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

                     Plaintiff,

     v.

JESUS FIERRO RABADAN,

                     Defendant.

Nos. CR 05-00405-MO
CV 09-70013-MO

OPINION AND ORDER

**MOSMAN, J.,**

Defendant, appearing pro se, filed a Motion to Vacate, Set Aside or Correct his sentence pursuant to 28 U.S.C. § 2255 (#75) and a Motion for Tolling of One-Year Limitation Period to File a § 2255 Motion (#77). Mr. Rabadan argues that I should toll the one-year period to file a § 2255 motion because an inmate legal assistant possessed his legal documents and failed to timely file the motion. He also argues that he was denied effective assistance of counsel and/or that his sentence is invalid. For the reasons set forth below, I DENY both motions.

## BACKGROUND

On March 27, 2006, Mr. Rabadan pled guilty (#14) in case CR 05-405-MO to one count of distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2. As part of the plea agreement, Mr. Rabadan waived his right to appeal or collaterally attack his own conviction or sentence under 28 U.S.C. § 2255, except for claims regarding ineffective assistance of counsel. (Plea Agreement (#14) ¶ 12.)

PAGE 1 - OPINION AND ORDER

The Presentence Report ("PSR") calculated a Base Offense Level of 32 regarding CR 05-405-MO and a Criminal History Category of V. In combination with a separate offense (No. CR 05-460-MO) sentenced at the same time, the PSR recommended a sentence of 151 months imprisonment and three years probation. As part of the plea agreement, however, the government and Mr. Rabadan agreed to a Base Offense Level of 30 in CR 05-405-MO, limiting the relevant conduct to two separate dates involving delivery of methamphetamine. (Plea Agreement (#14) ¶ 6.) When combined with the other offense in CR 05-460-MO and a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, the government anticipated a Base Offense Level of 28 and a Criminal History Category of V, with a sentencing range of 130-162 months imprisonment. (Pl.'s Sentencing Mem. (#36) 4.) Mr. Rabadan did not object to the Base Offense Level of 30 in CR 05-405-MO, but did object to Paragraph 32 of the Presentence Report, which included a conviction in Washington State when Mr. Rabadan was a minor. (Def.'s Sentencing Mem. (#35) 2-3.)

At sentencing on November 27, 2006, I found Criminal History Level V to accurately reflect Mr. Rabadan's criminal history. Accordingly, I sentenced him to 130 months imprisonment, three years of supervised release, and a $100 mandatory fee assessment in both offenses, to be served concurrently. (J. & Commitment (#45); *see also* CR-05-460-MO J. & Commitment (#29).)

Mr. Rabadan filed a notice of appeal to the Ninth Circuit (#47) on December 1, 2006, regarding both CR 05-405-MO and CR 05-460-MO. The Ninth Circuit consolidated the two appeals and subsequently dismissed them both on June 13, 2007. (#71.) Mr. Rabadan filed the instant motions on August 12, 2009. The government responded (#80) and Mr. Rabadan replied

(#85).

## DISCUSSION

I. **Timeliness of Motion**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") established a one-year

time limit on the filing of motions for collateral relief under 28 U.S.C. § 2255(f). The one-year

period runs, in relevant part, from "the date on which the judgment of conviction becomes final."

28 U.S.C. § 2255(f)(1).

A federal defendant's "judgment of conviction" generally includes both the adjudication

of guilt and the imposition of sentence. *See* Fed. R. Crim. P. 32(k)(1) (stating that the judgment

of conviction must "set forth the plea, the jury verdict or the court's findings, the adjudication,

and the sentence"); *Deal v. United States*, 508 U.S. 129, 132 (1993). When a defendant does not

file a direct appeal, his conviction becomes final when the time for filing the notice of appeal has

expired. *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001). When a defendant's

direct appeal is dismissed and he does not file a petition for certiorari, the one-year limitation

period begins to run when the time for seeking such review expires. *Clay v. United States*, 537

U.S. 522, 532 (2003).

The Ninth Circuit dismissed Mr. Rabadan's direct appeal on June 13, 2007. The one-year

period for filing a § 2255 motion in this case began ninety days later, on September 11, 2007, and

ended on September 11, 2008.

A. *Equitable Tolling*

AEDPA's one-year limitation period may be equitably tolled "if 'extraordinary

circumstances' beyond a prisoner's control make it impossible to file a petition on time."

*Calderon v. U.S. D. for C.D. Cal.*, 163 F.3d 530, 541 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) (citations omitted). "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002). A petitioner's lack of legal knowledge or assistance generally does not amount to extraordinary circumstances. *See Roy v. Lampert*, 465 F.3d 964, 970 (9th Cir. 2006).

### A.   *Mr. Rabadan's Delay*

Mr. Rabadan filed his Motion to Vacate, Set Aside or Correct Sentence on August 12, 2009, eleven months after the end of the one-year period for filing a § 2255 motion in this case. He argues that the court should toll the one-year period because he relied on an inmate legal assistant to file his § 2255 motion and did not discover the other inmate's failure to file such a motion until June 2009. (Def.'s Mot. for Tolling (#77) 1.) When Mr. Rabadan was transferred to a new correctional institution in February 2008, his legal papers remained with the inmate legal assistant at his former facility.[1] (*Id.*) Therefore, Mr. Rabadan asserts that he "lacked means and knowledge as to the case matter." (*Id.*) The papers that he possessed after the transfer were in Spanish, and I understand Mr. Rabadan to argue that this fact precluded meaningful legal assistance at the new facility because he knows only some English. (*Id.* at 2.)

In response, the government correctly argues that a habeas petitioner has no right to legal

---

[1] Mr. Rabadan asserts that he was not allowed to retrieve his legal papers from the library when taken to solitary confinement, and was subsequently transferred to another facility directly from solitary confinement. (Def.'s Reply (#85) Rabadan Decl. ¶ 14-16.) At the same time, Mr. Rabadan claims that his § 2255 motion was ready before he went into solitary confinement, and he "believed that the inmate [legal assistant] would mail the § 2255 motion because I was in the hole." (*Id.* ¶ 15-16.) There is no evidence that he ever contacted the former facility or the inmate legal assistant in an attempt to retrieve his documents or confirm filing of the motion.

counsel regarding post-conviction relief. (Pl.'s Resp. (#80) 6 (citing *Miranda v. Castro*, 292 F.3d at 1067-68).) Similarly, "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance" to toll the one-year period. *Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). Nor does a prisoner's detrimental reliance on an inmate legal assistant warrant equitable tolling. *See, e.g.*, *Marsh v. Soares*, 223 F.3d 1217, 1220-21 (10th Cir. 2000) (delay by prison inmate law clerk to whom petitioner entrusted the preparation of his state petition did not warrant equitable tolling); *United States v. Cicero*, 214 F.3d 199, 204-05 (D.C. Cir. 2000) (petitioner who entrusts jailhouse lawyer with legal documents does so at petitioner's own peril); *Paige v. United States*, 171 F.3d 559, 561 (8th Cir. 1999) (petitioner voluntarily risked late delivery when he relied on someone in another prison to draft his motion and send it to him).

Despite Mr. Rabadan's claim that he did not have access to his legal file in order to draft his motion, he simultaneously notes that he believed, at the time, the inmate legal assistant had filed the prepared § 2255 motion. (Def.'s Reply (#85) Rabadan Decl. ¶ 14-16.) He only discovered the assistant's failure to file the motion when he inquired as to its status with the clerk of the court on June 22, 2009. (Def.'s Reply (#85) Ex. H ("This is notice of my address change and request for the status of my motion to vacate, set aside, or correct sentence 28 USC § 2255. It's been filed over a year and I have not received anything from the Court.").)

The circumstances here are distinguishable from the Ninth Circuit case cited by Mr. Rabadan holding that denied access to legal materials may warrant equitable tolling. *See Espinoza-Matthews v. California*, 432 F.3d 1021 (9th Cir. 2005); *see also Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002). In *Espinoza-Matthews*, the petitioner was placed in Administrative

PAGE 5 - OPINION AND ORDER

Segregation for his own protection following an assault and slashing by another inmate. 432 F.3d at 1023. For nearly a year, prison officials repeatedly refused to give Mr. Espinoza-Matthews access to his legal files, despite his numerous requests. *Id.* at 1027. Instead, they kept his materials in storage and told him they were "not authorized to remove any property" from his storage space. *Id.* The petitioner in *Lott* was temporarily transferred from Folsom prison to two other prison facilities due to his involvement as a witness and claimant in an unrelated civil case. 304 F.3d at 921. Pursuant to the policy and practice of Folsom prison, he was "not allowed to transport with any legal materials other than those pertaining to the [civil] case." *Id.* As a result, Mr. Lott's legal files remained in storage at Folsom prison until his return. *Id.* at 921-22. In both cases, denial of access to legal files demanded equitable tolling.

Here, Mr. Rabadan voluntarily chose to leave his legal documents with an inmate legal assistant. In fact, he does not appear to have attempted retrieval of those documents because he thought the § 2255 motion had already been filed. He does not claim that prison officials kept his legal files while denying him access. Despite his reliance on an inmate legal assistant, Mr. Rabadan remained fully responsible for the timely filing of his motion. Therefore, I decline to equitably toll the one-year limitation period. The motion is denied as untimely. Because the merits are easily addressed, I discuss them below.

## II.    Ineffective Assistance of Counsel

Mr. Rabadan argues that he was denied effective assistance of counsel. He contends that (1) his counsel "failed to subject sentencing proceeding to focused, adversarial development of the factual and legal issues"; (2) he "was given a more severe sentence tha[n] the Guidelines recommended for a related offense in which Defendant was not charged"; (3) his counsel failed

PAGE 6 - OPINION AND ORDER

to "object to err[or] in Guideline calculation of recommended sentence" because the "plea agreement did not admit facts establishing the additional offense on which defendant['s] sentence was based"; and (4) his counsel "failed to object to the scoring of criminal history points under USSG § 4A1.1(a)(b) and (c)." (Mot. to Vacate (#75) 5.)

Counsel is only required to provide "reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate ineffective assistance of counsel, a party must show both that counsel's performance was deficient and that the deficient performance resulted in prejudice. *Id.* Prejudice exists where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The standard by which a court reviews counsel's performance is highly deferential, and there is a presumption that counsel rendered adequate assistance within the range of acceptable professional judgment. *United States v. Palomba*, 31 F.3d 1456, 1460 (9th Cir. 1994).

## A.    *"Relevant Conduct" Used in Sentencing*

Upon further explanation in his Reply, the first three allegations in Mr. Rabadan's Motion appear to challenge the inclusion of "relevant conduct" in the plea agreement apart from the count in the indictment to which he pled guilty.[2] (*See* Def.'s Reply (#85) 8.) Mr. Rabadan argues that the stipulation to relevant conduct in the plea agreement is an admission to the offenses for

---

[2] In fact, Mr. Rabadan seems to go back and forth between attacking the validity of his sentence ("After my appeal was dismissed I begun [sic] seeking help for § 2255 because I am sentenced for something that I am not guilty for.") and arguing that he lacked effective assistance of counsel at the time of his plea and/or at sentencing ("[Counsel] and I did not discuss . . . that the drugs charged in the other dismissed charges would be attributed to me by signing the plea deal.") (Def.'s Reply (#85) Rabadan Decl. ¶¶ 11, 13.)

which he did not plead. (*Id.*) More to the point, he alleges that his counsel[3] failed to "provid[e] him with an understanding that he would be sentenced as if he had been convicted" of the counts in the indictment to which he did not plead guilty. (*Id.*) "Counsel, thus, effectively permitted the district court to calculate the sentencing range for conduct that was dismissed as part of the inducement of the plea . . . ." (*Id.*)

Despite this argument, Mr. Rabadan acknowledges that "[t]he plea agreement stipulated to [relevant conduct including] 35 to 50 grams," but then argues he did not understand that the court could base his sentence on the stipulated relevant conduct in addition to the conduct to which he expressly pled guilty. (*Id.* at 12.) He also argues that his "counsel . . . did not claim that the district court would [err] by taking into consideration dismissed conduct as relevant conduct to [increase] his applicable sentencing range . . . ." (*Id.* at 14.) In direct contradiction, however, Mr. Rabadan recognizes that "a plea agreement that includes the dismissal of a charge . . . 'shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.'" (*Id.* at 13 (quoting U.S.S.G. § 6B1.2(a)).)

Mr. Rabadan's plea agreement expressly states the relevant conduct to which he agreed and also sets forth the applicable Base Offense Level used to determine the appropriate sentencing range. (Plea Agreement (#14) ¶ 6.) He signed the plea agreement and expressly stated his review and understanding of it at the plea allocution. Furthermore, even if Mr. Rabadan argues that his counsel at the time of plea did not adequately inform him of the relevant

---

[3] Mr. Rabadan refers here to his counsel at the time he entered his plea agreement. He had different counsel at sentencing.

sentencing range, he fails to establish that counsel's alleged inaccurate prediction precluded him from a knowing plea. The Base Offense Level used to calculate his sentence was plainly set forth in the plea agreement. Also, the Ninth Circuit has established that "an erroneous prediction by a defense attorney concerning sentencing" does not constitute ineffective assistance, except in cases of misleading or "gross mischaracterization." *See United States v. Michlin*, 34 F.3d 896, 899-900 (9th Cir. 1994) (citation omitted).

Here, it appears that Mr. Rabadan understood his sentencing range to be 92-115 months rather than 130-162 as urged by the government or 151-188 as urged by probation.[4] (*See* Def.'s Reply (#85) 10; Rabadan Decl. ¶ 22.) Assuming he understood the possibility of 92-115 month sentence, I do not find any evidence that counsel grossly mischaracterized Mr. Rabadan's potential prison term. Even if she did, there is no indication that *Strickland*'s second prong is met—that but for counsel's inaccurate prediction, the proceedings would have gone differently.

### B.    *Criminal History Used in Sentencing*

Mr. Rabadan also claims that his counsel "failed to object to the scoring of criminal history points under USSG § 4A1.1(a)(b) and (c)." (Mot. to Vacate (#75) 5.) To the contrary, Mr. Rabadan's counsel during sentencing did object to the inclusion of an adult conviction obtained when Mr. Rabadan was a minor. I considered arguments from both sides before deciding that the adult conviction was properly included in calculating Mr. Rabadan's criminal history score.

---

[4] While Mr. Rabadan first alleges that his counsel had a piece of paper that indicated he "would be sentenced to 24-30 months or something like that because of my acceptance," he states at least twice that he thought his sentence would fall within the 92-115 month range. (*See* Def.'s Reply (#85) 10 ("The court may have considered Rabadan['s] conduct when adjudging a sentence within the range of 92-115 months [for 5-20 grams of methamphetamine]"); Rabadan Decl. ¶ 22 ("I thought I would be sentence[d] for 10 G but less than 20 G of Methamphetamine").)

## CONCLUSION

For the reasons given above, I DENY defendant's Motion for Tolling of One-Year

Limitation Period to File a § 2255 Motion (#77). I also DENY defendant's Motion to Vacate, Set

Aside or Correct Sentence (#75).

IT IS SO ORDERED.


DATED this __5th__ day of _____November_____, 2009.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Judge